UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,    :
                                                 :     **MEMORANDUM & ORDER**
        -against-                 :     06-CR-532(DLI)
                                               :
ERIC ORTIZ,                        :
                                             :
                   Defendant.     :
------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

      Defendant Eric Ortiz stands accused of being a felon in possession of a firearm, in violation of 19 U.S.C. §§ 922(g)(1), 924(a)(2), as well as drug possession, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c), and possession of a firearm in furtherance of a drug crime, 18 U.S.C. § 924(c)(1)(A)(I). The drugs and the weapons were discovered during a search of his home on April 5, 2006. Ortiz now moves the court to suppress the drugs and weapons as the fruit of an illegal search on the ground that the warrant issued by the Honorable John H. Wilson, Acting New York State Supreme Court Justice, Kings County, was not issued on probable cause. Ortiz also argues that the good faith exception to the Fourth Amendment is inapplicable because the police and a confidential informant made misrepresentations in the warrant application. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Also before the court is Ortiz's motion to suppress a written confession allegedly obtained in violation of his Fifth Amendment rights. For the reasons set forth below, the motion is denied in its entirety.

## THE SEARCH WARRANT

      Based upon the court's *in camera* review of the unredacted search warrant application and the unredacted transcript of Justice Wilson's hearing, the court finds sufficient probable cause for the issuance of the search warrant. Moreover, as noted below, Ortiz failed to make sufficient sworn

allegations of fact justifying a *Franks* hearing. Based upon this finding, the court does not need to reach the issue of whether the "good faith" exception to the Fourth Amendment warrant requirement applies. However, the court finds that, even assuming that the warrant was defective, the good faith exception would apply.

Findings of Fact

On March 30, 2006, New York City police officers sought and were issued a warrant authorizing the search of the residence of Eric Ortiz, located at 59 Troutman Street, Apartment 3L, Brooklyn, New York (referred to as the "Subject Premises"). The warrant was issued by Acting New York State Supreme Court Justice John H. Wilson of Kings County. The confidential informant and Police Officer Ruben Duque ("Duque") testified at the hearing in support of the warrant. In addition to receiving testimony, before issuing the warrant, Justice Wilson reviewed Duque's affidavit in support of the application and questioned the confidential informant and Duque under oath.[1] The court has reviewed the unredacted affidavits of Duque and the minutes of the proceedings before Justice Wilson and has made the following factual determinations:

1) The confidential informant did not have a record of reliability because he had not provided information in the past. However, the confidential informant testified, under oath, and was able to demonstrate his reliability.

---

[1] The defense annexed the search warrant application, including a redacted version of Duque's Affidavit in Support of the Search Warrant Application ("Duque Aff."), a redacted copy of the warrant, and a redacted copy of the hearing transcript as exhibits to its Motion to Suppress Statements and Property ("Motion to Suppress"). The government provided unredacted copies to the court as exhibits to its Memorandum of Law in Opposition to Defendant's Motion ("Gov't Opp.") for the court's *in camera* review. In addition, the government also annexed an unredacted inventory of the items seized in the search ("Inventory"). All references in this Memorandum and Order are to the redacted transcript ("Tr."), the redacted Duque Aff. and the redacted Inventory.

2) The confidential informant testified regarding his relationship to Ortiz, his knowledge of the Subject Premises, what he saw when he visited the Subject Premises and his reason for coming forward (to make the neighborhood safer).

3) Duque testified that he had arrested the confidential informant for marijuana possession, for which the informant had been issued a summons.

4) In addition to his testimony, Officer Duque submitted an attesting that stated that the confidential informant had informed him that the informant had seen various weapons at the Subject Premeise and when observations were made. Duque Aff. ¶¶ 2, 4, 5.

5) Duque's affidavit also attested to his experience as a police officer and to the results of his own investigation, which independently corroborated some of the information provided by the informant. *Id* at ¶¶ 1, 3. For example, Duque confirmed that Ortiz received gas service and electric service in his name at the Subject Premises, and that Ortiz's car was registered to him at that address. *Id.* at ¶¶ 2, 4, 5.

The warrant was executed on April 5, 2006. The Inventory from the search indicates that drugs, guns, bullets, drug paraphernalia and currency were seized during the search, including an M-18 smoke cannister and several .9 millimeter hand guns.

Discussion: Probable Cause Existed for the Search

Ortiz asserts that the evidence obtained as a result of the search of his apartment must be suppressed because the warrant was issued without probable cause. Ortiz's assertion is without merit. First, a search warrant issued by an impartial magistrate is presumptively valid. *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) ("[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'") (*quoting Illinois v. Gates*, 462 U.S. 213, 236, 103

S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The Supreme Court has held that "where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause . . . the resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *see also U.S. v. Morales,* 280 F.Supp.2d 262, 268 (S.D.N.Y. 2003) (denying a motion to suppress based, in part, on the presumption of validity that attaches to a warrant).

Here, the warrant issued by Justice Wilson is detailed. The warrant states that the court had probable cause to believe that certain property related to firearms and firearms trafficking would be found at Ortiz's residence based upon the personal observations of a confidential informant present before the court. *See* Exhibit B to the Gov't Opp. The warrant also provides a detailed description of the Subject Premises. With respect to Justice Wilson's reason for crediting the information given, he noted that Duque provided an affidavit and that he took testimony from a witness. *Id.*

Neither Justice Wilson's reliance on Duque's affidavit, nor his reliance on the testimony of the confidential informant, gives the court any reason to question whether the warrant was issued on probable cause. With respect to the affidavit, there is "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Ortiz has not provided any reason for the court to dispense with the presumption that Duque's affidavit was valid.

In order to establish probable cause based on information provided by a confidential informant, the information must be demonstratively reliable based on the "totality of the circumstances." *See Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ("reasonable suspicion, like probable cause, is dependent upon both the content of information

4

possessed . . . and its degree of reliability. Both factors – quantity and quality – are considered in the totality of the circumstances – the whole picture that must be taken into account when evaluating whether there is reasonable suspicion."); *U.S. v. Smith*, 9 F.3d 1007 (2d Cir. 1993) (applying the "totality of the circumstances test" to probable cause determinations for search warrants). The veracity and reliability of an informant are fact sensitive determinations dependant on the totality of the circumstances including "whether the information an informant has provided is corroborated by independent investigation, because an informant who is right about some facts is more likely to be right about others." *Phaneuf v. Fraikin*, 448 F.3d 591, 598 (2d Cir. 2006). Other factors that can be taken into account are the reasons why the informant came forward, and what recourse the police have if the information turns out to be inaccurate. *See United States v. Salazar,* 945 F.2d 47, 50-51 (2d Cir. 1991) (expressing a preference for face-to-face informants).

Several factors demonstrate the reliability of the informant in this case. First, the hearing transcript of the proceedings before the issuing judge demonstrate that the informant was made available to the issuing judge and was questioned under oath by him. Second, the informant's basis of knowledge was his own observations inside Ortiz's apartment. Third, the informant had known Ortiz from the neighborhood for at least two years. Fourth, the informant provided the information out of altruistic motives, namely to make his community safer. *See* Exhibit B to the Gov't Opp. Fifth, the informant predicted the presence of numerous weapons, which were, in fact, recovered. *Huntley v. Superintendent, Supt. of Southport Corr. Facility,* 00 CV 191, 2007 WL 319846, *20 (N.D.N.Y. Jan. 30, 2007) (finding that information provided by a confidential informant was reliable and had veracity since the events occurred as the informant had predicted). Accordingly, there are no grounds for the court to find that the warrant was issued on less than probable cause.

There are factors beyond the informant's testimony that also provided reliability to his tip. First, the police independently corroborated that the defendant lived in the Subject Premises. *See U.S. v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) (finding that statements about a suspect's innocent activities, if independently corroborated, added to the finding that the informant's testimony established probable cause for a search). Second, the police had arrested the informant on a minor drug charge, indicating that the informant was known to the police and could be found if the information provided turned out to be false. *U.S. v. Redick*, 05 CR 168, 2006 WL 908153 (D. Conn. April 6, 2006) (finding that the informant was reliable, in part, because he could be held accountable if he ever knowingly provided false information). In sum, the court finds that sufficient probable cause existed for the issuance of the search warrant.

Discussion: The Good Faith Exception Applies

Without explaining what misrepresentations allegedly were made, Ortiz baldly claims that, because the officers made misrepresentations to Justice Wilson in support of their application for the search warrant, the "good faith" exception to the Fourth Amendment warrant requirement does not apply here, and, therefore, the search of his home was unconstitutional. Accordingly, Ortiz has requested a *Franks* hearing. *See Franks v. Delaware, supra*.

Even when affidavits submitted in support of a search warrant and the testimony from a confidential informant do not demonstrate probable cause, the illegally seized evidence may be admissible under "the good faith exception" to the Fourth Amendment. The good faith exception applies if the officers executing the warrant had no reason to believe the warrant was invalid and relied on its validity in good faith. *See U.S. v. Singh*, 390 F.3d 168, 181 (2d Cir. 2004). The good faith exception is dependent upon the objective understanding of the officers executing the warrant,

and, thus, it is not applicable where: "(1) the issuing magistrate relied on an affidavit that [the officers executing the warrant] knew was false or would have known was false had he or she not acted in 'reckless disregard of the truth;' (2) the 'magistrate wholly abandoned his judicial role;' (3) the 'affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;' or (4) the warrant is 'so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.'" *U.S. v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (internal citations omitted).

None of those exceptions apply here, and Ortiz has failed to set forth any sworn allegations of fact supporting any of these exceptions. A court is only required to hold a hearing to determine whether officers acted in such a way as to make the good faith exception inapplicable where "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *See Franks*, 438 U.S. at 155-156. Ortiz has made only bald, conculsory allegations that the court was misled. Therefore, he has failed to meet his burden to justify a hearing. The court finds that, even if there was not sufficient probable cause set forth in the search warrant, the officers were entitled to rely on the presumption of its validity and did so in good faith. Accordingly, the search conducted pursuant to the execution of the warrant was valid and defendant's motion to suppress the evidence seized as a result of the search is denied.

Finally, Ortiz alleges that he did not receive a copy of the search warrant and a receipt for the property seized in violation of New York Criminal Procedure Law § 690.50(4). However, the court need not determine whether this statute was violated. Even if it were, it would not require

suppression. *Fagan v. Kuhlman,* 267 F. Supp. 2d 388 (E.D.N.Y. 2003); *People v. Morgam*, 162 A.D.2d 723, 558 N.Y.S.2d 88 (2d Dep't 1990).

## MIRANDA WARNINGS

<u>Credibility Findings</u>

With respect to the *Miranda* issue, a hearing was held on April 9, 2007, during which New York City Police Officer James R. McKenna ("McKenna") testified for the government and defendant's mother, Maria R. Morales ("Morales") testified for the defense. The court finds the testimony of McKenna to be credible and finds the testimony of Morales credible to the extent indicated below. In this regard, the court notes that, prior to the hearing, the defense did not give notice to the court or to the government that Morales was a witness or a potential witness, and Morales was present in the courtroom during McKenna's testimony. She thus had the opportunity to shape her testimony in response to McKenna's testimony. *See United States v. Johnston*, 578 F.2d 1352, 1355 (10th Cir. 1978) *cert. denied*, 439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325 (1978) (exclusion of witnesses from courtroom a "time-honored practice designed to prevent the shaping of testimony by hearing what other witnesses say").

<u>Findings of Fact</u>

At the suppression hearing, McKenna testified that, during the execution of the search warrant, he was assigned to a support unit which was in the vicinity of the Subject Premises. Hrg. Tr. 16.[2] McKenna was not inside the Subject Premises, but testified that he learned from other officers that the warrant was "positive." *Id.* at 18.

Simultaneous with the search, Ortiz and Morales were arrested in Ortiz's car several blocks

---

[2] "Hrg. Tr."refers to the Transcript of the April 9, 2007 suppression hearing.

away. Hrg. Tr. 17; Declaration of Eric Ortiz in Support of Defendant's Motion to Suppress ("Ortiz Decl.") ¶¶ 1-3. Ortiz and Morales were first told that they were being arrested on a domestic violence charge. Ortiz Decl. ¶ 4. Shortly thereafter, McKenna arrived and arrested Ortiz for possession of drugs and weapons. Hrg Tr. 19. Ortiz was brought to the 83rd Precinct. *Id.* Morales, who did not believe that she was subject to the domestic violence charge, was not placed under arrest, but was "voluntarily" transported to the 83rd Precinct. *Id* at 22. McKenna testified that Morales could have been arrested since she shared the home with Ortiz and the drugs and weapons were found in plain view. *Id.* Morales testified that she felt she had been arrested, or, at the very least, was not free to decline McKenna's offer to transport her to the 83rd Precinct. Hrg. Tr. 63. McKenna conceded that Morales was, in fact, arrested and in custody when she was transported to the precinct. Hrg Tr. 42.

At approximately 2:40 p.m., Ortiz and Morales arrived at the 83rd Precinct and were brought upstairs into two separate interrogation rooms. Ortiz Decl. ¶¶ 5-6; Hrg. Tr. 23. McKenna first spoke with Morales at approximately 3:00 p.m.[3] *Id.* At 3:15 p.m., McKenna began speaking to the defendant. *Id.* First, McKenna told Ortiz that he was under arrest because "numerous guns and drugs were found" in his house. *Id.* at 24. Next, McKenna filled in the date, time (in military time), and location on a preprinted *Miranda* waiver form which was introduced as evidence at the hearing. *Id.* at 25; Gov't Opp. Exhibit A. The time in the upper right hand corner of the *Miranda* waiver form is "15:15." According to McKenna, it was his custom to begin every interview by filling out the

---

[3] Although the evidence indicates that she was in custody, there was no testimony regarding whether Morales was given *Miranda* warnings. Morales testified that she was asked if she knew "what [her] son was doing." Hrg. Tr. 65. In any event, she was never charged with a crime as a result of the events described herein.

time, date and location on a preprinted form and then delivering the *Miranda* warning. Hrg. Tr. at 25, 58. McKenna further testified that, after he administered the warnings, he confirmed that Ortiz understood his rights. He did so by asking Ortiz to check off "yes" as an answer to each question on the form. When McKenna reached the final question, Ortiz did not check off yes, but stated that, "he thinks he wants to speak with a lawyer." *Id.* at 26-28. In response, McKenna stated that, because the drugs and guns were in plain view in the apartment, if Ortiz did not cooperate, his mother would be subject to arrest. *Id*. McKenna then left the room. *Id.* When McKenna returned to the room, Ortiz stated that he was willing to waive his rights, and executed the final "yes" on the preprinted form. *Id.* at 29. McKenna signed the form first, and then Ortiz signed and dated it. *Id.* The form indicated that Ortiz signed it at 3:36 p.m., although McKenna testified that the form was actually signed prior to the confession, which, as noted below, indicates it was signed at 3:30 p.m. *Id.* at 30-31. McKenna testified that Ortiz wrote the time as 3:30 p.m. because McKenna always entered the time in as military time. *Id.* McKenna only noticed the time entry in preparation for testifying at the hearing. *Id.*

Ortiz offers a radically different version of events by way of affidavit. He claims that, after being taken into the interrogation room, McKenna (incorrectly identified as Duque by Ortiz) asked for permission to search his apartment, which Ortiz refused to grant. Ortiz Decl. ¶ 7. Ortiz also claims that he was never administered *Miranda* warnings but that, upon being taken into the interrogation room, he asked for "permission to call my lawyer, Larry Rothstein." *Id.* According to Ortiz, McKenna then left the interrogation room, returned, and threatened to arrest Morales. *Id.* at ¶ 8. Another officer, Robert Sims, then entered the interrogation room and questioned Ortiz about a murder investigation. *Id.* at 10. According to Ortiz, Simms reiterated McKenna's threat to arrest

Morales if his cooperation was not forthcoming. To prevent the arrest of his mother, Ortiz wrote out a confession, without having been given *Miranda* warnings. According to Ortiz, he was only given the warnings after writing out the confession, which is why the time on the confession is 3:30 p.m. but the time on the *Miranda* waiver for is 3:36 p.m. *Id.*

It is undisputed that Ortiz provided a written confession. *See* Gov't Opp. Exhibit B. The confession states that the guns and drugs recovered at the apartment were his and that Morales had no knowledge of the contraband. *Id*.

Ortiz further claims that he was never provided with a copy of the search warrant and never called his lawyer. *Id.* at 14. Morales was released after several hours. She was never charged with a crime, and her arrest was voided. Hrg. Tr. 41-42.

Discussion: Miranda Warnings

An individual must be given *Miranda* warnings when he is in custody and under interrogation. *Miranda v. Arizona*, 384 U.S. 436, S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Once the warnings are given, a suspect who invokes his right to counsel may not be questioned by law enforcement officers unless the suspect initiates the conversation. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *North Carolina v. Butler*, 441 U.S. 369, 372-376, 99 S.Ct. 1755, 1756-1759, 60 L.Ed.2d 286 (1979). However, a suspect is free to waive his rights, and may be questioned after doing so. To prove a valid waiver, the government must show that "(1) . . . the relinquishment of the defendant's rights was voluntary, and (2) . . . the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *U.S. v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1140, 89 L. Ed. 2d 410 (1986)). "No single factor determines whether a confession is voluntary." *Id*.

11

(citing *U.S. v. Bye*, 919 F.2d 6 (2d Cir. 1990)). In determining whether a waiver was knowing and intelligent, courts have focused on how the defendant was advised of his rights, whether he indicated he understood his rights, and generally whether the defendant was capable of comprehending his rights. *Lawrence v. Artuz,* 91 F.Supp.2d 528, 536 (E.D.N.Y. 2000). The burden of persuading the court by the preponderance of the evidence that there has been a valid waiver rests with the government. *Colorado v. Connelly*, 479 U.S. 157, 167-69, 107 S.Ct. 515, 521-23, 93 L.Ed.2d 473 (1986).

By affidavit, Ortiz claims that he requested to speak with his lawyer before McKenna began his questioning. If Ortiz is to be believed, he unequivocally invoked his right to counsel, and McKenna was not permitted to speak with him unless Ortiz initiated the conversation. *See Edwards,* 451 U.S. at 484-485. McKenna credibly testified that Ortiz was read his rights, that he answered "yes" to questions on the preprinted *Miranda* waiver form indicating that he knew his rights and was voluntarily waiving them, but hesitated at the final question that asked "now that I have advised you of your rights are you willing to answer questions?" Ortiz then stated that he "thinks he wants to speak to a lawyer before he wanted to speak to [McKenna] anymore." Hrg. Tr. 28. McKenna reminded Ortiz that his mother was subject to arrest since the drugs were found in plain view in the home they shared. *Id.* McKenna left the room, and no other officers entered the room at that time. When he returned, Ortiz had completed the preprinted *Miranda* form, waived his rights and, later, wrote out his confession. *Id.* at 29-30.

Based upon the facts adduced at the hearing, the court finds no constitutional violation. First, Ortiz's statement that he "thinks he wants to speak to a lawyer" is insufficient to invoke his Fifth Amendment rights. *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d

362 (1994) (holding that, as a general rule, to determine whether an individual has invoked his right to counsel, the court must conduct an objective inquiry into whether a reasonable officer under the circumstances would understand the defendant's statement to be a request for an attorney). *Davis* requires that a person being interrogated articulate his desire to have counsel present sufficiently clearly that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney. A "reference to an attorney that is ambiguous or equivocal" is insufficient. *Davis,* 512 U.S. at 459; *see also U.S. v. Lifshitz*, 03 CR. 572, 2004 WL 2072468, *11 (S.D.N.Y. Sept. 15, 2004).

Second, Ortiz presents no evidence that his waiver was coerced, aside from stating that McKenna threatened to arrest his mother. The government does not deny that McKenna informed Ortiz that Morales could be arrested. However, the government maintains that McKenna's statement was not a misrepresentation and was not coercive because Morales was criminally liable for the drugs and weapons found in plain view in the apartment she shared with Ortiz. It is not coercive to threaten a suspect's family member with arrest to secure a *Miranda* waiver from the suspect if, there is probable cause to arrest the family member. *See United States v. Mullens,* 536 F.2d 997 (2d Cir. 1976); *Gibson v. Phillips,* 420 F.Supp. 2d 327, 336 (S.D.N.Y. 2006). Indeed, Morales was arrested for violating New York Penal Law § 220.16 (criminal possession of a controlled substance in the third degree) and § 265.02 (criminal possession of a weapon in the third degree.). *See* Defendant's Exhibit A. The arrest was subsequently voided. *Id.*

Defendant's primary evidence of the alleged *Miranda* violation is the fact that the time on the *Miranda* wavier form is 3:36 p.m., which is *after* he wrote and signed his confession. Ortiz maintained that this supports his claim that he was given the *Miranda* warnings *after* he made his

13

confession. The court does not credit this version of events and, instead, credits the testimony of McKenna who stated that, before advising Ortiz of his *Miranda* rights, he noted the time in military time in the space allotted on the upper right-hand corner of the form. It is uncontested that Ortiz wrote the time in civilian time next to his signature on the *Miranda* form, not McKenna. Ortiz was not wearing a watch, and there was no clock in the room. The court finds that Ortiz either mistakenly or perhaps intentionally wrote the time incorrectly. Of course, the court cannot say for certain that Ortiz invented the *Miranda* issue out of whole cloth by intentionally writing the incorrect time on the waiver form since there is no evidence of this in the record. The court notes, however, that Ortiz was not a novice to the criminal justice system and has acquired several felony convictions and arrests. Accordingly, Ortiz was quite familiar with the arrest process and his rights. *See U.S. v. Ruggles,* 70 F.3d 262, 265 (2d Cir. 1995) (court can take into account a defendant's experience with the criminal justice system to determine whether there has been a valid waiver).

For all these reasons, the court finds that defendant knowingly, intelligently and voluntarily waived his *Miranda* rights, and his confession is admissible.

## CONCLUSION

Defendant's motion to suppress physical evidence and his post-arrest confession is denied in its entirety. The court finds that Ortiz knowingly, intentionally and voluntarily waived his *Miranda* rights, and that the search warrant was issued on probable cause.


DATED: Brooklyn, New York
May 22, 2007

                  /s/_____
                  DORA L. IRIZARRY
                  United States District Judge